IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH DIBENEDETTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:21-cv-04527-MHC-RDC |
| AT&T SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## AT&T SERVICES, INC.'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and Northern District of Georgia Local Rule 7, Defendant AT&T Services, Inc. ("AT&T Services") submits this brief in support of its Motion to Dismiss ("Motion").

## INTRODUCTION

On November 2, 2021, Plaintiff Joseph DiBenedetto ("Plaintiff") filed an expansive 124-paragraph Complaint alleging numerous theories of employment discrimination against his former employer AT&T Services. *See* Dkt. 1 ("Compl."). Plaintiff claims that he—a 58-year old white male—is a victim of a corporate-wide scheme to replace older, white, male employees like him with younger, non-white, women and thus, his termination could only be the result of unlawful age, race, **and** gender discrimination.

- 1 -

Even accepting Plaintiff's incredulous allegations as true for the purposes of this Motion, his race and age discrimination claims under 42 U.S.C. § 1981 ("Section 1981") and the Age Discrimination in Employment Act ("ADEA"), respectively, are barred by Supreme Court jurisprudence.  Plaintiff's Section 1981 claim and his remaining claims for race and gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") also fail because he has not sufficiently pled the *prima facie* elements of those claims, chiefly that AT&T Services harbored or acted with discriminatory animus against Plaintiff's race or gender when it eliminated his position.  Therefore, AT&T Services respectfully requests that the Court dismiss Plaintiff's Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## **FACTUAL BACKGROUND**[1]

During the time relevant to the Complaint, Plaintiff DiBenedetto was an Assistant Vice President ("AVP") of Tax Research and Planning at AT&T Services. Compl. ¶ 23.  In March 2017, Plaintiff began reporting to Gary Johnson, Vice President Property Tax. *Id.* ¶ 24.  By 2020, nine AVPs, including Plaintiff, reported

---

[1] AT&T Services disputes the factual allegations asserted by Plaintiff DiBenedetto in the Complaint and will disprove them should this litigation proceed.  However, AT&T Services accepts Plaintiff's version of the facts as true (as it must) solely for purposes of the instant Motion to Dismiss the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (noting courts must accept factual allegations as true when deciding a motion under Rule 12(b)(6)).

to Mr. Johnson.  *Id.* ¶ 47.  All nine of the AVPs reporting to Mr. Johnson were white and six were men.  *Id.*

The Property Tax group led by Mr. Johnson falls within AT&T Services' Tax department.  *Id.* ¶¶ 23-25.  The Tax department, in turn, is a unit of the Finance department led by Chief Financial Officer John Stephens.  *Id.* ¶ 26.  In the fall of 2020, the Finance department underwent a reduction-in-force "because the business was struggling."  *See id.* ¶¶ 70, 80.  The reduction-in-force impacted the Finance department's senior leadership, of which Plaintiff was a member.  *See id.* ¶ 66.  At the time of the reduction-in-force, 89% of the senior leadership in AT&T Services' Finance department was male and 86% was white.  Declaration of Yendelela Neely Holston ("Holston Decl.") ¶ 5, Ex. A-1 ("Stephens E-mail").[2] Accordingly, senior leadership impacted by the reduction-in-force would, by sheer numbers, be predominantly male and white.  As part of the reduction-in-

---

[2] In Paragraph 63 of the Complaint, Plaintiff refers to a July 27, 2020 e-mail from "CFO John Stephens . . . entitled 'More work to do in Finance.'"  Compl. ¶ 63. Plaintiff then provides a somewhat extensive recitation of what he purports were contents of that e-mail in an effort to establish AT&T Services' alleged age, race and gender animus.  *I.* ¶¶ 64-65.  Because Plaintiff has referred to the e-mail in the Complaint and the e-mail is central to his claims, this "[C]ourt may consider th[is] document[] as part of the pleadings in the case and may consider [it] in ruling on a motion to dismiss."  *Pearson v. Wesley Woods Senior Living, Inc.*, No. 1:19-CV-0176-WMR-JSA, 2019 WL 8438497, at *2 (N.D. Ga. July 18, 2019), *report and recommendation adopted*, 1:19-cv-00176-WMR-JSA, 2019 WL 8438496 (N.D. Ga. Aug. 26, 2019).  Accordingly, a true and correct copy of CFO Stephens' July 27, 2020 e-mail, attached as Exhibit A-1 to Holston Decl., is properly before the Court and may be considered in ruling on AT&T Service' Motion to Dismiss.

force, approximately twelve positions were eliminated within the Tax department. *Id.* ¶ 80. Plaintiff asserts that "approximately nine of them were male, all were white, and all were over the age of fifty." *Id.*

Plaintiff and the two other "AVP positions responsible for property tax negotiations and property tax research and planning that report[ed] to VP, Gary Johnson," were considered for elimination. *Id.* ¶ 81. All three of the individuals fitting this description were white and male. *Id.* ¶ 83. The work of these three individuals was consolidated into one role; thus, two of the positions were eliminated. *See id.* On or about September 17, 2020, Plaintiff was informed that his position was one of the two Tax Research and Planning AVP positions selected for elimination, and his last day of work at AT&T Services was November 2, 2020. *Id.* ¶¶ 67, 68, 78.

On March 1, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") where he "declare[d] under penalty of perjury" that he "believe[d] . . . AT&T terminated [his] employment because of [his] age, race, **and** gender." *Id.* ¶ 13; Holston Decl. ¶ 7, Ex. A-2 ("EEOC Charge") (emphasis added).[3] Specifically, Plaintiff alleged that he was told he

---

[3] The EEOC Charge is a statutory perquisite to Plaintiff's Title VII claims and determines the scope of the Title VII claims that Plaintiff can assert in this action. *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000). Thus, Plaintiff unsurprisingly references its filing and contents in the Complaint. *See* Compl. ¶¶ 13-15. Because Plaintiff has referred to his EEOC Charge in the Complaint, and it

would not be promoted because he "was an old, white male."  Holston Decl. ¶ 7, Ex. A-2.  Plaintiff also complained that "[d]uring the several years prior to [his] separation, the Tax Department has seemed to hire and promote more young, non-white, and women candidates."  *Id.*

This lawsuit followed on November 2, 2021.  The factual allegations in Plaintiff's Complaint largely mirror his EEOC Charge, but Plaintiff also alleged in his Complaint for the first time that Mr. Johnson "frequently discussed the ages of Tax department employees" and that AT&T Services' Senior VP of Human Resource Operations Scott Smith and Controller Debbie Dial led a webcast about AT&T Services' Diversity, Equity & Inclusion ("DEI") initiative in the fall of 2020 where they "referenced having sent demographic data on AT&T's workforce to the company's senior leaders"; "stated that [AT&T Services] had been formulating D&I operating plans for which leaders would be accountable"; and "stated AT&T would conduct quarterly D&I operations reviews."  Compl. ¶¶ 49, 72-73.

---

is central to his claims, this "[C]ourt may consider th[is] documents as part of the pleadings in the case and may consider [it] in ruling on a motion to dismiss." *Pearson*, 2019 WL 8438497, at *2.  Accordingly, a true and correct copy of Plaintiff's EEOC Charge, attached as Exhibit A-2 to Holston Decl., is properly before the Court and may be considered in ruling on AT&T's Motion to Dismiss.

## ARGUMENT AND CITATION OF AUTHORITY

"[A] plaintiff with 'a largely groundless claim' [should not be] allowed to 'take up the time of a number of other people . . . .'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). Accordingly, Rule 12(b)(6) of the Federal Rules of Civil Procedure permits courts to dismiss complaints that fail to state a claim upon which relief may be granted so they may "save the time and resources that would be wasted hearing evidence on claims that are legally insufficient." *Birt v. Montgomery*, 725 F.2d 587, 591 n.7 (11th Cir. 1984) (citation omitted).

To survive a motion to dismiss, a claim for relief must be supported by sufficient factual matter to be "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). As the Eleventh Circuit has explained, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 554). It is not enough that there be a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Further, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Hood v. Perdue*, 540 F. Supp. 2d 1350, 1356 (N.D. Ga. 2008) (citation omitted). A complaint that does not nudge the "claims across

the line from conceivable to plausible . . . must be dismissed." *Twombly*, 550 U.S. at 570.

Here, Plaintiff's Complaint offers numerous opinions, speculations, and inferences improperly casted as facts. The actual facts in his Complaint do not raise a right to relief above the speculative level. Accordingly, dismissal is proper. *See Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1354-55 (N.D. Ga. 2017) (dismissing claim because plaintiff did not proffer enough factual content to "raise a right to relief above the speculative level" (quoting *Twombly*, 550 U.S. at 555)).

## I.     Plaintiff Failed to Meet the But-For Pleading Requirements for His Section 1981 Claim

"Congress passed the Civil Rights Act of 1866 in the aftermath of the Civil War to vindicate the rights of former slaves." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020), *vacated and remanded by* 804 F. App'x 709 (9th Cir. 2020). Section 1 of the Civil Rights Act of 1866, which is codified in 42 U.S.C. § 1981, gives "[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts . . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). It is well-established that Section 1981 "provides protection **only on the basis of race**." *Henley*, 267 F. Supp. 3d at 1352 (emphasis added) (quoting *Rollins v. Ala. Cmty. Coll. Sys.*, 814 F. Supp. 2d 1250, 1259 n.1 (M.D. Ala. 2011)); *see Little v. United Techs*, 103 F.3d 956, 961 (11th Cir. 1997) ("It is well-established that § 1981 is concerned with *racial* discrimination in the making and

enforcement of contracts.").  Therefore, it is not sufficient that race be merely a "motivating factor" in the alleged unlawful conduct.  *See Comcast Corp.,* 140 S. Ct. at 1014.

The United States Supreme Court has made clear that the phrase "*on the basis of race*" in Section 1981 equates to a "but-for causation standard."  *Id.* at 1016.  Thus, a plaintiff in a Section 1981 case "bears the burden of showing that race was a but-for cause of [his] injury."  *Id.* at 1014.  This burden is present at all stages of the lawsuit, including at the pleading stage.  *Id.* at 1014-15.  Accordingly, to survive a motion to dismiss, a Section 1981 plaintiff "**must initially plead** and ultimately prove that, but for race, [plaintiff] would not have suffered the loss of a legally protected right."  *Id.* at 1019 (emphasis added).  In *Comcast*, the Supreme Court held that a complaint fails to plausibly allege a Section 1981 violation if it identifies race only as a "motivating factor" for the defendant's actions rather than as the "but-for" cause of those actions.  *Id.* at 1017-19.  "Put differently, a plaintiff cannot survive a motion to dismiss upon a showing that racial discrimination was one factor among many in a defendant's decision.  Racial discrimination must be the **determining** factor."  *Piccioli v. Plumbers Welfare Fund Local 130, U.A.*, No. 19-cv-00586, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020) (decided after and referencing *Comcast*) (emphasis added).

Here, Plaintiff has never asserted that race was the but-for cause or determining factor in his termination.  To the contrary, in his EEOC Charge, Plaintiff asserted that "AT&T terminated [his] employment because of [his] age, race, **and** gender."  EEOC Charge.  Plaintiff provided multiple examples of the ways in which he was allegedly aggrieved "because [he] was an old, white male" and a "58-year-old white guy."  *Id.*  Plaintiff "declare[d] under penalty of perjury" that his entire EEOC Charge, including his assertions that his race was only one of many reasons for his termination, was "true and correct."  *Id.*

Plaintiff's belief that numerous aspects of his identity motivated his alleged mistreatment is reaffirmed in the Complaint.  Indeed, the very first paragraph of the Complaint states that "[t]his is a case of illegal age, race, **and** gender discrimination in the workplace."  *See* Compl. ¶ 1 (emphasis added).  Plaintiff then purports to assert claims for race discrimination, gender discrimination, and age discrimination all premised on the same conduct.  *See id.* ¶¶ 2-4.  In addition to asserting counts of age and gender discrimination, Plaintiff devotes significant portions of his Complaint and approximately half of his EEOC Charge to making age-based allegations—ranging from purported ageist comments made by Mr. Johnson to perceived age discrimination committed by him to general observations Plaintiff has supposedly made about employment practices in the Tax department.  *See id.* ¶¶ 45, 46, 49-63, 86; EEOC Charge.  Similarly, Plaintiff

expends significant time arguing that his termination was partly based on his gender. *See, e.g.*, Compl. ¶ 84 ("Had AT&T eliminated any of Johnson's three female AVPs, this would have been inconsistent with AT&T's D&I goals"); EEOC Charge ("[AT&T] laid out plans for increasing . . . gender diversity").

Because Plaintiff's Complaint and EEOC Charge clearly allege that age and gender, **in addition to race**, were all factors in his termination, Plaintiff's Complaint is fatally deficient as a matter of law with respect to his Section 1981 claim. Plaintiff has not pled that race was the but-for cause of his injury. Thus, his Section 1981 claim should be dismissed in accordance with binding Supreme Court jurisprudence.

## II. Plaintiff's ADEA Claim Fails Because Age is One of Many Factors Alleged for His Termination

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual . . . **because of** such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). The phrase "because of" in the ADEA "indicate[s] a but-for causation requirement." *Comcast Corp.*, 140 S. Ct. at 1015 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-77 (2009)). Thus, to prevail on an age-discrimination claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Ayala v. Sheriff,*

*Broward Cnty. Fla.*, 594 F. App'x 602, 603 (11th Cir. 2015) (citing *Gross, Inc.*, 557 U.S. at 177-78).

"This ancient and simple 'but for' common law causation test" is the same one applicable in the Section 1981 context. *Comcast Corp.*, 140 S. Ct. at 1014. Indeed, in deciding that a complaint fails to plausibly allege a Section 1981 violation if it identifies race only as a "motivating factor" for the defendant's actions rather than as the "but-for" cause of those actions, the Supreme Court cited the ADEA case *Gross v. FBL Fin. Servs., Inc.* for support. *Comcast Corp.*, 140 S. Ct. at 1011. Thus, under the ADEA, Plaintiff is required to **initially plead** and must ultimately prove that but for his age he would not have suffered the loss of a legally protected right. *See id.* at 1019; *see also Piccioli*, 2020 WL 6063065, at *6 (discussing the pleading standard for a Section 1981 claim and citing the but-for requirement of the ADEA in support).

Nonetheless, Plaintiff has never asserted that age was the but-for cause or determining factor in his termination. To the contrary, at all stages from the EEOC Charge to the Complaint, Plaintiff has repeatedly maintained that "AT&T terminated [his] employment because of [his] age, race, **and** gender." EEOC Charge; *see* Compl. ¶¶ 1-4, 49, 52, 57, 59, 61, 80, 84, 85, 88 (asserting or inferring that age, race, and gender were at issue). Plaintiff cannot simultaneously claim discrimination based on age **and** gender **and** race and meet his burden under the

ADEA.  *See Culver v. Birmingham Bd. of Educ.*, 646 F. Supp. 2d 1270, 1271-72 (N.D. Ala. 2009) ("The only logical inference to be drawn from *Gross* is that an employee cannot claim that age is a motive for the employer's adverse conduct and simultaneously claim that there was **any** other proscribed motive involved."); *see also Whitaker v. Tenn. Valley Auth. Bd. of Directors*, No. 3:08-1225, 2010 WL 1493899, at *9 (M.D. Tenn. Apr. 14, 2010) ("Post-*Gross*, it is incongruous to posit such alternate theories because the very presentation of different reasons for an action suggest that age was not the *sole* reason for the action."); *McFadden v. Krause*, 357 F. App'x 17, 19 (9th Cir. 2009) (finding after *Gross*, there "is no . . . basis for recognizing a combined age/sex discrimination claim").  Accordingly, Plaintiff's ADEA claim fails for the same reason as his Section 1981 claim: Plaintiff failed to allege that the protected category was the but-for cause of his termination.  Thus, Plaintiff has failed to plead a plausible claim under the ADEA, and his claim should be dismissed.

**III.    Plaintiff Has Not Pled Plausible Claims for Race or Gender Discrimination**

A complaint purporting to assert claims for race or gender discrimination must assert sufficient facts to establish the statutory elements necessary to recover. *See Parker v. Diverse Staffing Ga., Inc.*, No. 1:20-cv-01913-TWT-RGV, 2020 WL 10575029, at *5 (N.D. Ga. Dec. 23, 2020), *report and recommendation adopted*, No. 1:20-CV-1913-TWT, 2021 WL 3367263 (N.D. Ga. Jan. 12, 2021).  "This necessarily

requires that a plaintiff include factual allegations for each essential element of his

. . . claim." *Id.* (citation omitted). In a Title VII or Section 1981 case involving a

discharge as part of a reduction-in-force, Plaintiff is required to assert sufficient

factual content that allows the court to draw the reasonable inference that his

employer intended to discriminate against him in making the discharge decision.

*See Daniels v. Westinghouse Elec. Corp.*, 772 F. Supp. 1278, 1281 (N.D. Ga. 1990)

(establishing elements of Title VII race and gender discrimination claims based on

reduction-in-force); *Nealy v. SunTrust Bank*, No. 21-11358, 2021 WL 5112819, at *2

(11th Cir. Nov. 3, 2021) ("Both Title VII and § 1981 have the same requirements of

proof and use the same analytical framework."). Plaintiff's Complaint does not

meet this pleading standard.

Plaintiff's Complaint appears to allege that his supervisor's opinion about

Plaintiff's odds of replacing him, AT&T Services' DEI communications about the

demographic makeup of the company's workforce and future plans, and

Plaintiff's unsupported observations about recent employment practices in the Tax

department sufficiently demonstrate that AT&T Services discriminated against

him because of his race and gender. *See* Compl. ¶¶ 45, 46, 57, 61, 63-65, 72-76.

However, none of these allegations plausibly evince any racial or gender-based

animus or motive by AT&T Services to eliminate Plaintiff's position because he is

a white male. Plaintiff's allegations are purely speculative and unfounded. *See*

*Twombly*, 550 U.S. at 555 (noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions" (alteration in original) (citation omitted)).  Accordingly, dismissal is appropriate because Plaintiff has not pled the essential elements of a Section 1981 or a Title VII discrimination claim.  *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004) (affirming dismissal of disparate treatment claim because "plaintiffs have not alleged any facts that support so much as an inference that racial animus motivated the defendants"); *Thornton v. Albany Drivers License*, No. 1:11-CV-171 (CDL), 2012 WL 3191769, at *3 (M.D. Ga. Aug. 2, 2012) (dismissing Title VII and § 1981 race discrimination claims where plaintiff "did not allege **any** facts that support an inference that racial animus motivated the [defendant]").

### a. Mr. Johnson's speculation about Plaintiff's prospects of someday replacing him do not evince unlawful animus

Plaintiff seems to allege that Mr. Johnson's purported speculation that Plaintiff was an unlikely candidate to be his successor because he was "an old, white male" and, alternatively, "a 58-year-old white guy," is evidence of racial and gender-based animus.  Compl. ¶¶ 57, 61.  As an initial matter, the conversation was entirely theoretical as Mr. Johnson was still employed, and his position was not open.  Moreover, Mr. Johnson's **opinions** about Plaintiff's prospects are merely his predictions and clearly do not express any racial or gender-based hostility towards Plaintiff.   Furthermore, even if his speculation demonstrates

discriminatory animus, Plaintiff has not pled any facts to show that Plaintiff's position was eliminated as a result of this alleged animus.  Indeed, there can be no nexus between Mr. Johnson's supposed animus and Plaintiff's job elimination because all three Tax Research and Planning AVP positions that Mr. Johnson could have chosen among for elimination were occupied by white men.  *See id*. ¶ 83.  In fact, the entire department was overwhelmingly white and male.  *See* Stephens E-mail.  Thus, any reduction-in-force would necessarily impact mostly white men **unless** women and people of color were specifically targeted.  For these reasons, Mr. Johnson's alleged isolated remarks cannot raise an inference of discrimination.  *See, e.g., Soto v. Marist Coll.*, No. 17-CV-7976 (KMK), 2019 WL 2371713, at *5 (S.D.N.Y. June 5, 2019) (granting motion to dismiss because "'[i]solated derogatory remarks by a decisionmaker alone do not raise an inference of discrimination' absent 'a nexus between the remarks and the adverse employment action'" (citations omitted)); *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 177 (E.D.N.Y. 2017) (granting motion to dismiss Title VII claim where the plaintiff alleged discriminatory remarks by school administrators but "fail[ed] to plead any additional facts that would suggest" the defendants initiated the alleged adverse employment action because of this discriminatory animus).

      **b. CFO Stephens' E-mail and a DEI Webcast similarly do not demonstrate that AT&T Services harbored racial or gender-based animus**

CFO Stephens' e-mail and a DEI webcast similarly do not make Plaintiff's race and gender discrimination claims any more plausible. *See* Compl. ¶¶ 63-65, 72-76. Neither contains any indicia of hostility towards white or male employees. Rather, the animus comes from Plaintiff's unfounded inferences and conclusions and not from the content of either the e-mail or the webcast. Plaintiff's conclusions are not facts, and Plaintiff has not pled any facts to plausibly show that AT&T Services was motivated by unlawful animus.

Mr. Stephens' "More work to do in Finance" e-mail states that the Finance department must "focus more on attracting and retaining diverse employees" and "will explore opportunities to further infuse diversity and inclusion" in the workplace. Stephens' E-mail. It does not state—nor can it be inferred—that AT&T Services planned to terminate white or male employees to fulfill its DEI goals. In fact, the words "race" and "gender" only appear in the titles to employee demographic charts. *Id.* ("Workforce Race / Ethnicity Demographics," "Workforce Gender & Race / Ethnicity Demographics," etc.). AT&T Services' mere *awareness* of its employee demographics certainly does not turn its decision to eliminate Plaintiff's position into one **motivated** by unlawful animus. Moreover, Mr. Stephens' e-mail neither explicitly states nor implicitly suggests anything whatsoever about increasing or decreasing any specific demographic of employees. *Id.* Plaintiff's inference that it does is thus entirely speculative.

Accordingly, Mr. Stephens' e-mail cannot reasonably be read as evidence that AT&T Services intended to or in fact eliminated Plaintiff's position because of his race or gender.

Plaintiff's allegations about the October 8, 2020 DEI webcast similarly do not demonstrate that AT&T Services harbored animus towards white or male employees or that it eliminated Plaintiff's position because of such animus. Plaintiff alleges in his Complaint that during the webcast, AT&T Services' Controller and Senior Vice President of Human Resource Operations stated that (1) demographic data of AT&T Services' workforce was sent to senior leaders; (2) AT&T Services was "formulating D&I operating plans"; and (3) the company would "conduct quarterly D&I operations reviews." Compl. ¶ 73. Plaintiff does not allege that the "operating plans" or "operations reviews" involved or included terminating white or male employees or that the webcast discussed AT&T Services' goals or plans to alter any specific demographic of employees. *Id.* ¶¶ 72-75. In sum, Plaintiff's allegation that the webcast evinces unlawful motive is, again, wholly unsupported and based on sheer speculation. Plaintiff's allegations about the webcast therefore do not reasonably demonstrate whatsoever that AT&T Services harbored animus towards white or male employees or was motivated to eliminate Plaintiff's position by the same.

Plaintiff's efforts to offer CFO Stephens' e-mail and a DEI webcast as evidence of discriminatory animus are misplaced.  Neither suggests that AT&T Services is going to remove its current workforce or otherwise take action against existing white male employees.  There is nothing wrong or discriminatory about noting that the Finance department and the Company did not have the diversity of workforce one would expect based on the demographics of the population of available employees.  Thus, the e-mail and webcast in and of themselves do not make Plaintiff's race and gender discrimination claims any more plausible.  "[T]o state a plausible claim for relief, a plaintiff must go beyond merely pleading the 'sheer possibility' of unlawful activity by [ ] defendant[s]."  *Parker*, 2020 WL 10575029, at *5.  Plaintiff has failed to do so.

### c.  Plaintiff's rank speculation about recent hiring practices does not show discriminatory motive related to Plaintiff's job elimination

Finally, Plaintiff's wholly unsupported allegations that since 2018, the Finance department has hired and promoted "more heavily non-white, and more heavily female" employees "than would be expected in the absence of discrimination" similarly do not **plausibly** demonstrate that AT&T Services acted with unlawful motive when it eliminated Plaintiff's position.  Compl. ¶¶ 45, 46.  Plaintiff offers no factual allegations whatsoever to support this claim; he does not provide examples, statistics, or anecdotes.  Furthermore, this conclusion is directly contradicted by Plaintiff's **factual** allegations that in 2020, "VP Gary Johnson had

nine AVPs reporting to him, including DiBenedetto. **All nine were white**. Three were women, and **six were men**." *Id*. ¶ 47 (emphasis added). These statistics do not suggest "heavily non-white" and "heavily female" hiring or promotion practices.

In addition, every AVP responsible for tax research and planning that reported to Mr. Johnson was a white male. *See id*. ¶¶ 81, 83. Thus, it was impossible for Mr. Johnson to select a non-white, non-male Tax Research and Planning AVP for termination. By the same token, the Tax Research and Planning AVP that Johnson retained was a white male.[4]  *See id.* ¶ 83. Thus, Plaintiff's inference that AT&T Services eliminated his position because he is white and male is nothing more than unsupported, rank speculation that should not be afforded any weight by this Court. *Franklin v. Anderson Media*, No. 8:10-cv-2935-T-33MAP, 2011 WL 3875519, at *3 n.2 (M.D. Fla. Aug. 31, 2011) (holding that the "allegation . . . is simply speculation and is not entitled to any deference, weight or presumption in context of the Court's consideration of a motion to dismiss" (citing *Twombly*, 550 U.S. at 545)).

---

[4] Plaintiff also appears to allege that his positive performance reviews are evidence of unlawful animus and discrimination. *See* Compl. ¶¶ 28-40. However, the Tax Research and Planning AVP who was retained is also a white male, so Plaintiff's allegations of strong work performance are not indicia of discrimination. *Id.* ¶¶ 81, 83. Moreover, Plaintiff does not allege that he was a better employee or stronger performer than his peer AVP who was unaffected by the reduction-in-force.

## CONCLUSION

Plaintiff's Section 1981 and ADEA claims are foreclosed by the Supreme Court's decisions in *Comcast Corp.* and *Gross*, respectively. Plaintiff's Section 1981 and remaining Title VII claims should also be dismissed because Plaintiff has failed to sufficiently plead that AT&T Services harbored or acted with discriminatory animus. Accordingly and as set forth more fully above, AT&T Services' Motion to Dismiss should be granted, and Plaintiff's Complaint should be dismissed in its entirety.

Respectfully submitted this 3rd day of January, 2022.

*/s/ Yendelela Neely Holston*
Yendelela Neely Holston
Georgia Bar No. 424429
Chang (Alice) Yu*
North Carolina Bar No. 53720

KILPATRICK TOWNSEND
  & STOCKTON LLP
Suite 2800, 1100 Peachtree Street
Atlanta, GA   30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
yholston@kilpatricktownsend.com
ayu@kilpatricktownsend.com

Sheldon W. Snipe
Georgia Bar No. 665790

AT&T SERVICES, INC.
One CNN Center
Atlanta, GA 30303

Telephone:  (404) 893-7953
sheldon.snipe@att.com

*Counsel for Defendant*

*\*pro hac vice* application forthcoming

## **<u>LOCAL RULE 5.1(C) CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing pleading filed with the Clerk of Court

has been prepared in 13-point Book Antiqua font in accordance with LR 5.1(C).

NDGa.

Respectfully submitted this 3rd day of January, 2022.

<u>*/s/ Yendelela Neely Holston*</u>
Yendelela Neely Holston

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH DIBENEDETTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:21-cv-04527-MHC-RDC |
| AT&T SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2022, I served a copy of the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF AT&T SERVICES, INC.'S**

**MOTION TO DISMISS** on counsel of record through the Court's CM/ECF

system, which will notify all counsel of record as follows:

> LEGARE, ATTWOOD & WOLFE, LLC
> Steven E. Wolfe
> Marissa R. Torgerson
> 125 Clairemont Avenue, Suite 380
> Decatur, GA 30030
> sewolfe@law-llc.com
> mrtorgerson@law-llc.com

> */s/ Yendelela Neely Holston*
> Yendelela Neely Holston

> *Counsel for Defendant*

23