IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH DIBENEDETTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:21-cv-04527-MHC-RDC |
| AT&T SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## AT&T SERVICES, INC.'S REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS

Plaintiff Joseph DiBenedetto's Response to Defendant AT&T Services, Inc.'s Motion to Dismiss ("Response"), Dkt. 9, is replete with threats, conjecture, and misstatements of the law but offers little in the way of facts or precedent to save his claims from dismissal.

The United States Supreme Court's 2020 decision in *Comcast Corp. v. National Ass'n of African American-Owned Media*, 140 S. Ct. 1009 (2020), explicitly states the pleading standard for claims under 42 U.S.C. § 1981 ("Section 1981"). In so doing, it relied heavily on its Age Discrimination in Employment Act ("ADEA") decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), thereby suggesting that the same standard for pleading applies to both Section 1981 and ADEA claims. In

both of these decisions, the Supreme Court directly **rejected** the argument that the **"motivating factor" causation test** used in cases brought under Title VII of the Civil Rights Act of 1964 ("Title VII") applies in the Section 1981 and ADEA contexts.  Thus, Plaintiff's attempts to salvage his Section 1981 and ADEA claims by relying on the Title VII case of *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), are both concerning and futile.

Plaintiff's efforts to save his Title VII race and gender claims are similarly unavailing.  Confronted with AT&T Services, Inc.'s ("AT&T Services") thorough analysis of the shortcomings of the **factual** (as opposed to speculative) allegations in the Complaint, Plaintiff attempts to rewrite his Complaint in the Response.  Although Plaintiff may have misgivings about what he pled, his new allegations cannot refute AT&T Services' argument that none of the actual facts **in the Complaint** plausibly show that AT&T Services harbored or acted with discriminatory animus towards Plaintiff.  Accordingly, Plaintiff's Complaint should be dismissed in its entirety.

## ARGUMENT AND CITATION OF AUTHORITIES

Simply because Plaintiff has filed a lengthy complaint does not mean that it is sufficient to survive a motion to dismiss for failure to state a claim.  Indeed, here, the length of the complaint is merely illustrative of Plaintiff's aptitude at casting

rank speculation and legal conclusions as facts. However, Plaintiff's speculative allegations, unsupported inferences, and legal conclusions are unavailing because they are not entitled to any deference, weight, or presumption in the context of the Court's consideration of a motion to dismiss. *See Hood v. Perdue*, 540 F. Supp. 2d 1350, 1356 (N.D. Ga. 2008) (finding in a motion to dismiss, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations" (citations omitted)). Rather, AT&T Services' Motion to Dismiss tests the **factual** sufficiency of the Complaint. When confronted with the Supreme Court's decisions in *Comcast Corp.* and *Gross* and the law of this Circuit, it is clear that the **facts** alleged in the Complaint are not "enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**A. Plaintiff's Reliance on *Bostock* is Misplaced**

Plaintiff asserts that his Complaint is sufficient because he "need only show his race/age was one of multiple factors that caused his termination." Resp. at 5. Plaintiff relies on *Bostock* for this misstatement of the law and goes so far as to insinuate that AT&T Services intentionally misled the Court by failing to cite *Bostock* in its Motion to Dismiss. *Id.* at 7 n.4. Plaintiff's argument is as wrong as it

is laughable. AT&T Services did not cite to *Bostock* because it is inapplicable and irrelevant to Plaintiff's case. Had Plaintiff devoted more time to reading *Bostock* than scouring the world wide web for "evidence" of AT&T Services' alleged deceit, it would have been obvious to Plaintiff why *Bostock* does not apply to his case and therefore did not warrant any space in AT&T Services' Motion to Dismiss.

As Plaintiff acknowledges, "*Bostock* was decided under Title VII." *Id.* at 6. The only issue before the Court in *Bostock* was the meaning of "because of" as used in Title VII. 140 S. Ct. at 1738 ("We must determine the ordinary public meaning of **Title VII's** command . . . ." (emphasis added)). The Court's framing of the issue makes clear that its decision is limited only to Title VII.

Judge Gorsuch, who authored the majority opinion in *Bostock*, also authored the majority opinion in *Comcast Corp.* **less than three months earlier**. In *Comcast Corp.*, Judge Gorsuch noted the difference between Title VII and Section 1981 **and** rejected the very argument that Plaintiff makes here. *See* 140 S. Ct. at 1017-19. Just as here, the plaintiff in *Comcast Corp.* urged the Court to apply the "motivating factor" causation test from the Title VII context to Section 1981 cases. *Id.* at 1017. The Court noted that Title VII and Section 1981 were "two statutes with two distinct histories, and not a shred of evidence that Congress meant them to incorporate the same causation standard." *Id.* The Court then concluded that the

Title VII but-for test was inapplicable in the Section 1918 context, pointing to its decision in the ADEA case of *Gross* for support.  *Id.* at 1011, 1018.  Accordingly, the Court held that "[a]ll the traditional tools of statutory interpretation persuade us that § 1981 follows the usual rules, not any exception.  To prevail, a plaintiff **must initially plead** and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Id.* at 1019 (emphasis added).

Despite this clear language and distinction by the same Judge in both opinions, Plaintiff brazenly and wrongly argues that "*Bostock* plainly applies to both Title VII and the ADEA" and also "provides the meaning of but for cause under [Section] 1981."  Resp. at 6, 7.  Rather than threatening sanctions or musing on AT&T Services' legal budget, *see id.* at 24-25, Plaintiff's time would have been better spent studying the *Comcast Corp.* decision or doing more exhaustive research.  Had he done so, Plaintiff would know that the it is he who is taking "positions contrary to precedent."  *See id.* at 24.  He would have also discovered that at least one Court of Appeals has flatly rejected the argument that *Bostock* changes the meaning of "because of" under the ADEA.  *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) ("*Bostock* extends no further than Title VII and does not stretch to the ADEA."), *reh'g en banc denied*, (Apr. 29, 2021), *cert. denied sub nom. Pelcha v. Watch Hill Bank*, 142 S. Ct. 461 (Nov. 8, 2021).  In *Pelcha*, the Sixth

Circuit held that *Gross* (and not *Bostock*) provided the meaning of "because of" in the ADEA due to both the professed limitations of *Bostock* and the fundamental tenet that a court must follow a case which directly controls over another that "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions." *Id.* at 324 (citations omitted).

Given the clear limitation of *Bostock* to the Title VII context, the Sixth Circuit's decision in *Pelcha*, and the complete lack of a single Eleventh Circuit case supporting Plaintiff's argument, this Court should reject Plaintiff's argument that *Bostock* applies to his Section 1981 and ADEA claims. *Comcast Corp.* and *Gross*, which are both directly on point, were issued by the Supreme Court, and have not been overturned, provide the standard for Section 1981 and ADEA claims, respectively.

**B. *Comcast Corp.* and *Gross* are Controlling Precedent**

When applying the actual binding precedent of *Comcast Corp.* and *Gross*, it is clear that Plaintiff has failed to state plausible claims under Section 1981 and the ADEA. The Supreme Court has determined that the phrase "**on the basis of** race" in Section 1981 and the words "**because of** such individual's age" in the ADEA both require the "ancient and simple 'but for' common law causation test." *See Comcast Corp.*, 140 S. Ct. at 1014, 1015-16 (in part citing *Gross*, 557 U.S. at 176). Thus,

to survive a motion to dismiss, a Section 1981 plaintiff "**must initially plead** and ultimately prove that, but for race, [plaintiff] would not have suffered the loss of a legally protected right." 140 S. Ct. at 1016, 1019 (emphasis added). Likewise, since the same standard applies (as both parties acknowledge), under the ADEA, Plaintiff is required to **initially plead** and must ultimately prove that but for his age he would not have suffered the loss of a legally protected right. *See id.* at 1019; *see also Carreker v. Int'l Longshoremen's Assoc.*, No. 2:13-CV-081, 2014 WL 6604789, at \*6 (S.D. Ga. Nov. 20, 2014) (citing to *Gross* and holding the allegations of age and sex in the complaint "foreclose . . . [the] possibility" "that age was the 'but for' cause of the employer's adverse decision").

Plaintiff has neither pled nor ever asserted that race was the but-for cause of his termination. Instead, in both his EEOC Charge and the instant Complaint, he asserts that AT&T Services terminated him for multiple reasons, including his age, race, **and** gender. *See* Dkt. 4-4, EEOC Charge; Compl. ¶¶ 1-4. Similarly, Plaintiff has never asserted that age was the but-for cause or determining factor in his termination. Plaintiff even effectively admits in his Response that his age was not the determining factor of his termination. *See, e.g.*, Resp. at 19 ("[AT&T Services] conducted the RIF so as to retain women and non-white leaders, and to increase those groups' percentage among the leadership ranks.").

Plaintiff's argument that *Comcast Corp.* and *Gross* do not foreclose his Section 1981 and ADEA claims because "[e]ven before *Bostock*, all but a few cases held that but for cause did not require sole causation" can be swiftly rejected by the Court. *See* Resp. at 8. First, cases decided before 2020 that contradict *Comcast Corp.* have no effect. Further, the cases that Plaintiff cites for not requiring sole causation are all either irrelevant or not binding on this Court. *See id.* For example, *Kingsley v. Tellworks Communications, LLC*, only analyzed but-for causation in the context of plaintiff's Fair Medical Leave Act retaliation claim; plaintiff there did not assert a Section 1981 or an ADEA claim so *Kingsley*—like *Bostock*—has nothing to do with Plaintiff DiBenedetto's claims. No. 1:15-CV-4419-TWT-JSA, 2017 WL 2624555, at *33 (N.D. Ga. May 24, 2017). *Evanston Insurance Co. v. Sandersville Railroad Co.* is even more irrelevant as it analyzed but-for causation only in the context of whether an insurance policy's pollution exclusion precluded coverage for injuries to a welder's lung. No. 5:15-CV-247 (MTT), 2016 WL 5662040, at *8-10 (M.D. Ga. Sept. 29, 2016).

Plaintiff's remaining argument that AT&T Services "has no good authority for its position" is also erroneous. Resp. at 8. As an initial and fundamental matter, *Comcast Corp.* and *Gross* are "good authority." They are binding on this Court and together, foreclose Plaintiff's Section 1981 and ADEA claims. Plaintiff's efforts to

distinguish the numerous other cases cited by AT&T Services in support of this positions fall flat.  Plaintiff's contention that *Piccioli v. Plumbers Welfare Fund Local 130, U.A.*, No. 19-cv-00586, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020), "mis-cite[d]" *Miller v. American Airlines, Inc.*, 525 F.3d 520, 523 (7th Cir. 2008), is irrelevant because ultimately, *Piccioli*'s holding is consistent with *Comcast Corp.* and *Gross*.  Resp. at 9.  Similarly, *Savage v. Secure First Credit Union*'s holding regarding Rule 8 does not salvage Plaintiff's claims because it does not apply to Plaintiff's sworn statements in his EEOC Charge.  No. 15-12704, 2016 WL 2997171, at *1 (11th Cir. May 25, 2016) (per curiam) (unpublished).  Finally, to the extent that *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012), "overruled" *Whitaker v. Tennessee Valley Authority Board of Directors*, No. 3:08-1225, 2010 WL 1493899 (M.D. Tenn. Apr. 14, 2010), it too has been "overruled."  Resp. at 10.  *Lewis* was decided before and is inconsistent with *Pelcha*, which, again, held that under the ADEA, "[p]laintiffs must show 'that age was the reason that the employer decided to act'" and rejected the argument that "plaintiff[] need not prove that [age] was the only cause of the termination."  *Pelcha*, 988 F.3d at 324 (citations omitted).

Because Plaintiff's Complaint and EEOC Charge clearly allege that age, gender, **and** race were all factors in his termination, Plaintiff's Complaint is fatally

deficient as a matter of law with respect to his Section 1981 and ADEA claims. Thus, both claims should be dismissed in accordance with binding Supreme Court jurisprudence.

**C. Plaintiff's race and gender discrimination claims fail because he has not alleged sufficient facts to plausibly show that he is entitled to relief.**

Contrary to Plaintiff's contention, AT&T Services addressed every category of evidence that Plaintiff offered in his Complaint in support of his race and gender discrimination claims, and none—separately or collectively—plausibly shows that Plaintiff is entitled to relief under Section 1981 or Title VII. *See* Mem. of Law in Supp. of Mot. to Dismiss, Dkt. 4-1, at 12-20.

**1. Mr. Johnson's speculation does not make Plaintiff's claims plausible.**

Plaintiff argues that Mr. Johnson's alleged comments about Plaintiff's prospects of replacing him were a "truthful, factual assessment that DiBenedetto's race and gender were career obstacles at AT&T." Resp. at 15. Plaintiff attempts to bolster this conclusion by suggesting that "Senior VP Tax Paul Stephens . . . confirmed" that he would not get a promotion "as 'a 58-year-old *white guy*.'" *Id.* at 15-16. But that is not what Plaintiff pled in his Complaint. *See* Compl. ¶ 59. In his Complaint, Plaintiff alleged that Mr. Johnson told him that Mr. Stephens wanted people who "have a little bit more runway ahead of them." *Id.* This is

merely one example of Plaintiff's bold misstatements of his allegations in the Complaint. Without Plaintiff's misleading embellishments, Mr. Johnson's alleged statements, even if true, are entirely hypothetical and say nothing about Plaintiff's continued employment or his race or gender. Indeed, they presuppose that Plaintiff's employment will continue, just not in Mr. Johnson's role. Further, Plaintiff does not allege that Mr. Johnson had any role in creating the decisional unit related to Plaintiff's layoff. In addition, a white man assumed Plaintiff's duties after he was laid off. *See id.* ¶ 83. Thus, regardless of whether Mr. Johnson's comments were "truthful, factual assessment[s]" or speculation, they provide no support whatsoever for Plaintiff's race and gender discrimination claims.

### 2. CFO Stephens' e-mail and the Diversity, Equity, and Inclusion webcast do not demonstrate any racial or gender-based animus.

Just as Mr. Johnson's comments fail to demonstrate that AT&T Services harbored or acted with discriminatory animus, CFO Stephen's e-mail and the Diversity, Equity, and Inclusion ("DEI") webcast lend no credence or support to Plaintiff's claims or his grand, preposterous and self-serving allegations of a large scale conspiracy. Mem. at 15-18. Neither of the communications directed or implied that managers must terminate white or male employees or that AT&T

Services must alter any specific demographic of employees.  *See* Compl. ¶¶ 63-65, 72-76; CFO Stephens E-mail, Dkt. 4-3.

CFO Stephens' e-mail shared data about employee demographics in the Finance Department and laid out three "opportunities" for the department to "explore" in support of AT&T Services' diversity goals.  *See* CFO Stephens E-mail, Dkt. 4-3.  Those included:

- Examining our talent pipelines for opportunities to ensure we are considering competitive, diverse slates for all openings while continuing to focus on retention.

- Lifting up diverse perspectives and fostering inclusion and employee engagement through open and honest conversations.

- Identifying leadership development programs and practices that provide underrepresented employees with opportunities to gain knowledge and experience to advance into leadership roles.

*Id.*  These action items in CFO Stephen's e-mail neither mandated nor implied that white and male employees would or should be terminated or replaced, and no reasonable person could read CFO Stephen's e-mail directing his team to "explore opportunities" to "[e]xamine," "[l]ift[] up . . . and foster[]" and "identify[]" as a rallying cry to eliminate white male employees.  *Id.*

Similarly, Plaintiff's allegations about the DEI webcast do not demonstrate that AT&T Services harbored or acted with any animus towards white or male

employees. According to Plaintiff's own words, the DEI webcast merely shared that (1) demographic data of AT&T Services' workforce was sent to senior leaders; (2) AT&T Services was "formulating D&I operation plans"; and (3) AT&T Services would "conduct quarterly D&I operations reviews." Compl. ¶ 73. Plaintiff does not allege that the "operating plans" or "operations reviews" involved or included terminating white or male employees. *Id.* ¶¶ 72-75.

To get around these deficiencies, Plaintiff distorts the allegations in his Complaint and asserts "facts" for the first time in his Response. For example, in the Response, Plaintiff contends that CFO Stephens determined that "DiBenedetto could not advance because he was a white male." Resp. at 20. However, Plaintiff did not allege in his Complaint that CFO Stephens said anything about his race or gender. *See* Compl. ¶ 59. CFO Stephens' fictitious statement cannot therefore demonstrate that AT&T "rel[ied] on D&I goals in personnel decisions affecting DiBenedetto." *See* Resp. at 20. Plaintiff also alleges for the first time in his Response that CFO Stephens' e-mail and the DEI webcast "state, among other things, a preference for women and non-whites," but the e-mail says nothing about a "preference" for any group of employees, and Plaintiff's Complaint similarly does not allege that demographic "preference[s]" were discussed during the webcast. Resp. at 21; Compl. ¶¶ 72-75. The Court may not consider these self-

serving allegations which appear nowhere in Plaintiff's Complaint.  *See Brohm v. Nautic Partners, LLC*, No. 1:18-cv-3995-AT, 2019 WL 12831727, at *5 n.8 (N.D. Ga. July 23, 2019) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

### 3. Plaintiff's "observations" are speculative.

In response to AT&T Services' argument that he has not provided any factual allegations in the form of examples, statistics, anecdotes, or otherwise to support his "observations" about recent hiring practices, Plaintiff absurdly points to Mr. Johnson's alleged comments about his promotion prospects as anecdotal evidence.  *Id.* at 23.  Mr. Johnson's alleged comments that Plaintiff was not likely to become his replacement if and when he retired is not an anecdote that supports Plaintiff's allegation that more non-white and female employees have been hired and promoted since 2018 because he never alleges (1) that Mr. Johnson's position was open; (2) that he applied for it; or (3) that a non-white female was selected as Mr. Johnson's replacement.  *See* Compl. ¶¶ 1-124.

Plaintiff also argues that his observation is consistent with CFO Stephens' e-mail, "which shows that Finance's non-management (where there is the highest turnover) are only 39% white, while management (lowest turnover) is 60% white, and senior leadership (lowest turnover and the focus of Stephens' email) is 86%

white. . . . A similar trend holds for Finance's gender breakdown . . . ."  Resp. at 22.  In reality, these statistics **refute** Plaintiff's argument because, if anything, they suggest that white and male employees are overwhelmingly promoted over non-white and female employees.  The data also does not evince that "beginning in at least 2018," non-white and female employees were being disproportionately hired because the data does not provide any information about when each employee was hired.[1]  Plaintiff's speculative "observations" are undermined by AT&T Services' actual employee demographic data and provide no factual support for his race and gender discrimination claims.

## CONCLUSION

For the foregoing reasons and as set forth more fully in AT&T Services' Motion to Dismiss, Plaintiff's Complaint should be dismissed in its entirety.

Respectfully submitted this 1st day of February, 2022.

>*/s/ Yendelela Neely Holston*
>Yendelela Neely Holston
>Georgia Bar No. 424429
>Chang (Alice) Yu
>North Carolina Bar No. 53720

---

[1] Plaintiff's allegations about turnover rates must be ignored because they are alleged for the first time in his Response and appear nowhere in his Complaint.  *See Brohm*, 2019 WL 12831727, at *5 n.8 ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

- 16 -

                    KILPATRICK TOWNSEND
                       & STOCKTON LLP
Suite 2800, 1100 Peachtree Street
Atlanta, GA   30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
yholston@kilpatricktownsend.com
ayu@kilpatricktownsend.com

Sheldon W. Snipe
Georgia Bar No. 665790

AT&T SERVICES, INC.
One CNN Center
Atlanta, GA 30303
Telephone:  (404) 893-7953
sheldon.snipe@att.com

*Counsel for Defendant*

## **LOCAL RULE 5.1(C) CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 13-point Book Antiqua font in accordance with LR 5.1(C). NDGa.

Respectfully submitted this 1st day of February, 2022.

                                      */s/ Yendelela Neely Holston*
                                      Yendelela Neely Holston

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOSEPH DIBENEDETTO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 1:21-cv-04527-MHC-RDC |
| AT&T SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2022, I served a copy of the foregoing **AT&T SERVICES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** on counsel of record through the Court's CM/ECF system, which will notify all counsel of record as follows:

> LEGARE, ATTWOOD & WOLFE, LLC
> Steven E. Wolfe
> Marissa R. Torgerson
> 125 Clairemont Avenue, Suite 380
> Decatur, GA 30030
> sewolfe@law-llc.com
> mrtorgerson@law-llc.com

>  */s/ Yendelela Neely Holston*
> Yendelela Neely Holston

> *Counsel for Defendant*